This honorable appellate court for the 2nd district is now open. The Honorable Justice Robert D. McLaren presiding along with Justice Catherine and Justice Donald C. Hudson. The case is numbers 219-0140 and 219-0830. In re Estate of Lily Martin, a disabled person, Tina Hyatt, petitioner-appellee versus Alan J. Martin, respondent and cross-petitioner-appellant. Arguing for the appellant, Alan J. Martin. Arguing for the appellee, Mary Berlin. You may proceed, Mr. Martin. Thank you, Your Honor. May it please the court again, it's Alan Martin for the appellant. I know Your Honors have read everything and I think this is going to be for these post-death awards. It's undisputed that Lily Martin passed away, never having been adjudicated to be disabled. No guardian was appointed, no guardianship account was ever established. Under the line of cases that address this, the Wellman case, this court's Palico, Gebbis, the guardianship court's continuing jurisdiction and retained powers upon Lily So there has to be a provision within the Probate Act for these kinds of awards. There clearly is set forth in Wellman and Palico where you have a specific appointment such as the GAL, guardian ad litem. Those fees are awardable. There is a basis in the Probate Act and as set out, there's been a resolution with the guardian ad litem and the court's 4-10-10-2018 orders were August 23, 2019, recognizing the court filed stipulations and resolutions with the guardian ad litem. As Tina Hyatt and Paul Martin and their counsel, neither one was ever appointed and they held no capacity recognizing the Probate Act as being a representative. So as to those awards, there was no purpose for those awards. Once Lily passed away, there was no prospect of anyone ever being appointed a guardian. So those awards did not have a proper basis and so with that reversal as to the 10-10-2018 orders, that would conclude this case. The second issue would be if there was a basis, what would be the proper source of payment if there was a basis? And the issue is that the UBS transfer on death account would not be a transfer on death and payment on death are statutory creations of the Illinois legislature with a specific purpose. Ownership transfer to the beneficiaries once Lily Martin passed away and there were alternative funds as specifically recognized by the Circuit Guardianship Court in terms of a substantial refund, residency refund for Monarch Landing, which the court recognized would be a proper alternative source to safeguard and use the term good resolution. So to the extent there was a basis, it was not a source of payment, it was not properly the UBS TOD account. Separately from those two issues, there was a separate threshold issue and that was the propriety of the KB law firm getting involved and representing Tina Hyatt and bringing this petition for guardianship of Lily Martin. Given that Lily Martin was KB as asserted, there was a previously a client, they had all information about her, the sensitive client information going to help and issues that arose are her mental capacity and you go on down the line and as set out in the briefs, Tina Hyatt had been adjudicated during order of protection proceedings in Will County to have been acting in concert with Paul Malley, also known by the false alias Richard Russell, as having sought to exploit Lily Martin and in fact the UBS account was one of the issues that had been the subject of the Will County OP proceedings as one of the means by which there was an attempt to get to her funds that was the and Daniel Martin. So as to the guardianship court, the circuit court, Lily Martin in essence would have mooted all issues. Since there was no guardian appointment, there would have been no claim for fees and once that's all mooted, then the merchant disqualified would be mooted. But he couldn't have a partial mooting because it's an important threshold issue that bears on the motion to disqualify mooted and then entertain the controversy as to whether there was propriety to make a claim for fees. The last issue, and this is just preserved so there's no waiver, but I believe the prior points that have just gone over would resolve this issue, would resolve the case basically. But if there was to be a basis in a ward, there's the issue of the law offices of Alan Martin LLC being determined by the court not to be subject as a matter of law to a claim relying on fee-shifting statute cases. This distinguishable one because long-time attorney, lifelong time attorney since graduating from law school for Lily and Daniel Martin and Alan Martin was adjudicated as the legal representative with recognized powers of attorney for Lily Martin to act and speak for her during the Will County Order of Protection proceedings and the appearance and filings were made noting that it was in that capacity. And neither Tina Hyatt nor Paul Martin ever held any legally recognized, any court representative capacity for Lily Martin. Then separately as to the legal issue of fee-shifting statutes as set out in the Illinois Supreme Court 2019 McCarthy v. Taylor case, there isn't a per se, even in the context of a pure pro se attorney representation, there isn't a per se bar on attorney being awarded fees and distinguishing the fee-shifting statutes. The last point being the common fund doctrine because when you look at what is done for the issue for both the health and well-being of Lily Martin and avoiding her having excruciating death from an oral cancer was getting her enrolled into a trial Iola immunocancer therapy treatment, which was successfully done, was successful in halting her, the spread of her oral cancer and was exceedingly expensive, but we're able to get her enrolled in the specialized Merck program that allowed her to receive those treatments without cost to the state. So there was a substantial benefit to the state that well exceeded that. But as said before, I think that issue would be mooted by the prior issues that we've discussed. And I think that is it. I think it's relatively straightforward, Your Honors. The relief or plus it would be that the 101018 orders be reversed with the limited modification that the court made on August 23, 2019 that recognized the stipulations to resolve getting the fees paid of the guardian ad litem. But I think that in short summarizes the position. Thank you. Any questions? I have questions, Bob. Okay. Mr. Martin? Yes. Argued that the trial court lacked subject matter jurisdiction to award the attorney's fees because Lily died before the court guardian. Question that I have is, and you've cited the case of state of Davis in court for their proposition. According to our research, you get this relied in a case in Ray M. M. from the Illinois Supreme Court. It's subsequent to get 56 on my second 50. And then that was those cases were overruled specifically by several cases, leading Bellville, Toyota. In that case, the court held that circuit court has general subject matter jurisdiction that is not controlled by a statute. So how do you square your up your argument with those cases that actually overruled Gavis and the other cases? Well, what happened in the line of cases and the explanation, including in the court decision, which discusses some of this is that you do have original subject matter jurisdiction, but then the issue of the court's continuing jurisdiction and the language that was used as retained powers are prescribed by the probate act. So there isn't even in the original jurisdiction, just a court cannot unilaterally make these kinds of awards without a basis. So if the retained power after Lily Martin passed away, you're looking to the probate act and the discussion of Pelico as well as Wellman says, where you have a specific provision, such as for a guardian ad litem, the continuing jurisdiction, the retained powers do continue to make that kind of award, but there has to be a basis in the probate act. And there is no basis in the probate act for any award to Tina Hyatt and the KB law firm, as well as Paul Martin and his counsel, because there was neither was a guardian and neither held any representative capacity as recognized by the probate act. So that would be the requirement for any kind of award of that kind. And even separately from that, they held no legally recognized representative capacity for Lily Martin, even outside the probate act. All right. So it's your argument that the gap is holes of the circuit courts jurisdiction by certain sections of the probate act? I think when you put the cases together, they have evolved. And as your honor pointed out with the subsequent decisions, there is jurisdiction in the first instance, but the language is used in Pelico and subsequent cases is the continuing jurisdiction and the retained powers have to find their basis in the probate act. All right. Let me ask you some questions that I think bring in the mootness doctrine into the mix here. You've argued the trial court erred by entering the attorney's fees to be paid from the UBS account because it had a transfer upon death designation and Lily had died, right? Is that what you're arguing? They transfer immediately per statute at the time she passed away. What about the siblings? And I think you were part of this entering into a stipulation that the fees would be paid from the estate assets. The trial court entered the stipulations when it granted your motion to reconsider and vacate in part. Since arguably your rights in the UBS and the TLD were no longer affected, wouldn't that issue be moot? As long as there, yeah, there is an issue about these fees. The issues in the stipulation were the payment of the guarding ad litem fees. So that's only a portion of the original 1010 18 orders. So that got resolved and since in essence everyone has a one-third interest in the UBS account and you become an owner when she passed away, the other two parties can decide what they want to do with their one-third and if they decide that they want to pay their portion of the guarding ad litem fees out of their cash portion of the UBS account, they're entitled to that. They were able to do that. And I want to back up. Back in January, everyone except KB at the very end actually negating their client's consent had agreed to a stipulation whereby the fees for the GAO would be paid strictly from the monarch landing alternative funds refund. And then there was a later subsequent change that they wanted to pay a portion out of their one-third cash shares. That was fine. And then the one-third that was applicable to appellant was first stipulation to come from the monarch landing refund as part of the estate. And so that resolved the guarding ad litem fees but not the issue that the issues that are currently on appeal. I've got two quick questions on the other motion. Your motion to disqualify the client. When Lily died, there was no need, of course, to appoint a guardian. So where would the potential conflict come in with her? Well, the issue is whether the petition should have been filed in the first instance on behalf of Tina Hyatt as a client adverse to the interests of Lily Martin. And since it's a threshold issue, there wouldn't be a basis for making claims to fees if they should not have been doing it in the first instance. But what your honor is getting at, and I agree that if Lily's death moots the claims and the claims can't be brought because they weren't guardians, it then would correspondingly move the disqualification motion. But you can't have a partial mooting. You can't partially say, well, it moves the issues of the propriety of the KB representation and disqualification motion, but yet we can still proceed to entertain and award on pre-claims. I've got a final question regarding your pro se attorney's fees. I mean, you are correct that the plain language of section 27A does not preclude an award of attorney's fees to a pro se attorney. It's obviously a period pro se. However, you have the Supreme Court case of Hamer versus Lentz. The Supreme Court specifically held that whereas the legislature provides a to the extent that a lawyer elects to proceed pro se, he or she has no attorney's fees to claim and is not entitled to an award of attorney's fees under the statute. And Hamer and his progeny have consistently applied that in other contexts. So tell us why Hamer and his progeny does not apply here to bar your fees. Well, I think there's a number of reasons, your honor. First was it the actions that were taken were on her behalf for her well-being, health, and to benefit the estate. And it had been adjudicated as having the valid powers of attorney to act in the county proceeding. The only court adjudication is who had the powers of attorney, valid powers of attorney to act for Lillie Martin. So in the first instance, I don't believe it was a pure pro se representation because the actions and as laid out and everything were done on behalf of Lillie Martin. But in terms of the fee shifting statutes in the prior Illinois case law, speaking about a pure pro se attorney representation in the recently decided 2019 Illinois Supreme Court McCarthy v. Attorney's Fees. And in that case, in the award of the attorney fees to the pro se attorney representing himself in a pure one-on-one legal dispute with another party were awardable, and the court distinguishes prior cases and fee shifting cases. So that's the basis on that point. All right. That's all I have. Thank you, Mr. Martin. Thank you, your honor. Justice Enoff, do you have any questions? Well, those were exactly the questions I was going to ask. The ones that Justice Hudson did. I'm afraid I didn't unmute myself fast enough earlier. So thank you, Justice Hudson. You covered the issues that I had. Mr. Martin, if this case had been dismissed like you wanted it to, and the account had been distributed, and the parties had paid their own attorneys, as I think the court order said, would you be appealing that? I'm not sure I understand the issue, your honor, and I just may not be following it. The issue is that the attorney's fees for the parties, the siblings other than you, were paid out of their shares of the death benefits that were transferred upon death. Is that not correct? That is not correct. UBS is still holding all the monies except for the agreed portion in the stipulation that was paid to the guardian ad litem. So they've not been paid out. I see. And I believe it's supposed to be a third, a third, a third, or am I wrong? No, that's correct. Well, are they, if we affirm this and it becomes a final judgment in the sense that it's now some other siblings attorney's fees? Well, the thing is, it doesn't distinguish. So you're taking monies that are coming for one party's attorneys that are coming out of a share that belongs to another party. So it isn't the instance that was done strictly with regard to the guardian ad litem, where there was agreement for certain shares of the two parties to come from their cash amount where they were paying back to the guardian ad litem. But if your honor was to affirm, it would not result in what your honor thought happened because that was with respect to the guardian ad litem. And in essence, I would be, for example, and Paul Martin would be paying toward KB fees out of a portion of what is our funds in the UBS account that transferred already on death. Okay. I have no further questions. Thank you, your honor. Thank you. Appellee's counsel, you may proceed. Thank you. Good morning. Mary Berlin. I'm the attorney for Tina Hyatt, the original petitioner in the guardianship case and appellee here. I think that where I was going to start was with the question of whether the court has issues and, you know, what is that issue here with fee petitions. There's already been discussion about Gebbes and the cases that came after in this district as well as others that the court does have ongoing jurisdiction after the death of a respondent or ward. Mr. Martin's argument then goes to whether there is actual authority in the Probate Act to award fees to the attorney for a petitioner for guardianship, which there is in Section 25-2A of the Probate Act. There is a specific authority for the attorney for a representative to be entitled to reasonable compensation for his services. The cross petitioner, Mr. Martin, tries to take a very limited view of the word representative, arguing that it needs to be a court-approved, a court-appointed representative in order for that individual's attorney's fees to be awardable. But that ignores the case law interpreting that statute differently. I'm specifically looking at the state of Roselli, the first district case, where the court says that it's well-established that an attorney for a person seeking conservatorship or guardianship is entitled to attorney's fees, whether the petition is successful or not. So that the definition or the interpretation, rather, of the word representative is much broader. And the court in that case addresses the limitation that cross-petitioner puts forward and indicates that in looking at the legislature's drafting of that, that no such limitation on the word representative was intended. So not only do you have ongoing jurisdiction based on the general jurisdiction of the circuit court that continues on after the death of a ward or respondent in a guardianship case, but you also have specific authority in the probate act to award fees to the attorney for a petitioner such as Tina Hyatt in that case. Turning to the UBS account and whether that is a proper source of payment for the fees that were approved and awarded, I believe that it is. The guardianship case was initiated because UBS would not recognize either of the parties, either Tina Hyatt or Alan Martin's power of attorney. There were conflicting documents on file and UBS specifically told our office that a guardianship was needed before any action could be taken on the account. The account was essentially frozen. So the fact that this entire case started because access to UBS was restricted, I think is one very big reason why it's entirely appropriate to award fees and costs from the case and assess them against this UBS asset. I think that there is jurisdiction there for the reasons discussed previously. I think the Transfer on Death Security Registration Act that cross-petitioner bases his argument on, yes, it says ownership transfers, but that does not mean that a court does not have jurisdiction over the account. There's no support for the position that this court, this guardianship court had jurisdiction over that account during that jurisdiction at the moment of her passing. There's also the Doctrine of Equitable Contribution that I think is important to consider here. There is the case that I would reference for that is in Estate of Brailt, which is a 1965 case, but it's been affirmed in Estate of Elias more recently in 2011, where the court ordered that attorney's fees in a probate be paid from non-probate assets, basically assets that were not part of the estate. The court there looked at several factors, and one of which was whether the attorney's services were in the interest of that asset that the fees were coming from. In this underlying case, the guardianship court in awarding KB Law Group's fees specifically found that the attorney's services were for the benefit of the respondent. So that matches up with that factor. The court there in that case also looked at whether the probate assets were insufficient to pay the fees, and then making it reasonable to go outside the probate to find assets to satisfy fee orders. And that was the case here as well. The only available asset at the time that those the other factor, another factor is whether those non-probate assets that fees came from were closely related to the case, which I've gone through that this UBS account was central to this case, and then whether the court had jurisdiction. Moving to the issue of the disqualification of the cases that Cross Petitioner cites in support of his argument that this needed to be heard first before fees were awarded. Those cases involved summary judgment, motion to dismiss, substantive and dispositive rulings. We never got to that point in this case. No guardian was appointed. No adjudication of disability was made. No petitions were granted or denied. Also, the disqualification issue is moot, not only because Lily Martin passed away and no longer needs a guardian, and none will ever be appointed, but also because it would have no effect. A disqualification of KB Law Group would not affect the order for fees because those were made on a separate finding and basis of being necessary and in the interest of the guardianship estate, and so the disqualification would not have any effect. Also wanted to point out quickly that even if that disqualification issue was heard, there has been nothing stated in support of a disqualification. In order for there to be a conflict, there needs to be something materially adverse. Just a filing for guardianship in itself is not materially adverse, and there is no actual conflict alleged. The final issue of Mr. Martin's fees, I agree that the Hamer decision and all the decisions that have come since have been very clear that a self-represented attorney litigant is not entitled to fees, public policy reasons. In those cases, I wanted to specifically address the most recent case that Cross Petitioner brings up, the McCarthy-Illinois Supreme Court case in 2019. That was extremely narrow and limited to a case involving Rule 137 sanctions, and the case specifically said that the award of fees was intended as a punishment against the party who was abusing the judicial process, not as a reward to a successful pro se attorney. That is all I have at this moment. I'm ready for your questions. Thank you. Justice Hudson, do you have any questions? Yes. Ms. Berlin, let me ask you, was there ever a stipulation between the siblings that the approved attorney's fees would be paid out of their respective one-third shares of the UBS account, that no payment would be made from Allen's one-third share of the UBS account? Was there ever such a stipulation? No stipulation was signed. The only stipulation that was signed was a stipulation that two-thirds of the GAL's fees come from UBS and one-third from the probate estate. So the record didn't reflect any agreement that Allen would not be required to pay one-third of the fees? That he would not be required, not on the record, no. Where is this coming from, then? Where is that argument coming from? The argument that his, his argument that, that his fees would, I'm not, I'm not sure. There were agreements on perhaps taking fees out of the UBS account. There was never any agreement that he would not be responsible for anybody's fees, and there was never an agreement that each party would bear their own fees. And your argument that he should be required, or at least part of the payment would come out of his fees, is because this was necessary, this litigation was necessary, because otherwise they were not going to pay out of the UBS account by agreement, is that correct? What is your rationale? It was necessary, it was, so my rationale is that this is an asset of the guardianship. I realize the guardian was not appointed, but this was an asset that was part of the guardianship case. The fees were awarded to come out of that account, off the top, so to speak, because this was an asset of Lily Martin's, not because the parties were being forced to individually, or the parties were being asked to pay the fees. It was an assessment of the fees against the respondent, Lily Martin's asset. So she was paying out of her asset before any distribution to beneficiaries. Affect the beneficiaries equally, you're arguing? There is some question about whether that account should be split equally. There's some disagreement on that, and the TOD form itself, I don't think that affects what is on appeal, but I don't necessarily agree that it would be split equally. Well, then how do you respond to his argument, then, that he should not be required to pay these fees? Because this came from Lily Martin's asset. The TOD account is hers. It was subject to the guardianship court's jurisdiction. It was the subject of this case, and that is what the court had to award fees from. And the fees of each attorney affected, or were found to benefit her, or to benefit Lily Martin. And so those should come from her asset first, before any consideration next of who the beneficiaries are. All right. Thank you, Ms. Berlin. Justice Enoff, do you have any questions? Well, I'd like to go back to the issue of pro se representation. Why didn't the actions of the appellant here on behalf of Lily regarding getting her into the special treatment program come within the recognized exceptions allowing compensation for him and actually the efforts of his law firm? I understand you talked about the narrow point in the recent case, but the exceptions are broader than that. Are they not? You know, I don't think that they are. I do not see a case where a self-represented attorney litigant is able to receive compensation on this basis of benefit to an estate. And, you know, beyond that, I don't actually believe that it has been shown that his efforts saved her estate a significant amount of money. I don't know how many treatments she had. I think it was very few. He said it was successful, we haven't really gone through that. Yes, there was no cost to those handful of treatments that she received. But, you know, was that a significant effort? Was this trial treatment readily offered for free to people who are willing to try it? I don't see it much in the way of supporting facts for benefiting her estate. Thank you. I don't have any other questions at this time. Thank you. Ms. Berlin, could I verify the timeline that by the time the court entered the order relating to the assessment of guardian ad litem fees and attorney's fees that Lillian had already passed? That is correct. She passed away in May and the orders were in October. Of the same year? Of 2018. Okay. I'm not sure I quite understand why a document that says transfer upon death wouldn't transfer upon death. It may have been an asset of Lillie's and if the trial court had entered the order while Lillie was still alive, your argument makes sense. But if I were to accept your argument, it would seem to me that the IRS could make the same claim and assess taxes on that account when in fact that account was set up to avoid taxes. Am I incorrect in my understanding or not? I, there, the fact that it transfers on death does, you know, provide some benefits avoiding probate and perhaps taxes. I don't know for certain. But there are cases where the court was still able to assess or exercise authority over a TOD account. And one of those was Elias that I referenced where the TOD beneficiary had to return fees to the estate. And I think that the courts continue. And one other thing that I wanted to point out and I haven't had a chance to yet is if there is no way for a guardianship court or a probate court to assess fees against a TOD account, then there are going to be situations where if attorneys and GALs don't file fee petitions constantly that there's, you know, even if their services are found to be in the best interest of the estate and for the benefit of the ward, those fees have nowhere to come from. I don't think it's uncommon to have a guardianship estate that has a single account. Well, you assume, do you not, that it means that there's nothing in the estate that would pay as an alternative source, correct? Yes. Because it's not a sine qua non where you either get it through this account or you don't get it ever. Right. Yes. No. My argument makes the assumption or takes it, I guess, one step further. In this case, she didn't have any available funds at the time. And so my argument is that if there's no ability for the guardianship court to assess fees against a TOD account that had been owned by the respondent or ward, what about the cases where there is no probated estate and there is no other secondary asset? Well, I guess that's what we have to decide. As I think Justice Hudson said, why is it that we thought that there was a stipulation that was not of record? It sounds somewhat paradoxical, but if you could enlighten me or the panel, I would appreciate it. I think what you might have read was an email when we were talking about some resolutions. The only stipulation in the record was for the guardian ad litem. That's the only stipulation that was reached. There were some initial discussions, and I'm looking for the email, about how we could use the UBS account to pay the attorney's fees ordered. But that was never signed. And you said something that made me believe that if the order was affirmed, there would still have to be some sort of an adjudication or an apportionment by the trial court as to where this money came from, insofar as the rights of the parties to this asset, because you suggested that there were issues about the distribution and the percentages or something like that. Did I misunderstand what you related? No, you didn't. You didn't misunderstand. There are, but it would not be. That is a question that is currently in a trust action in front of a different judge in DuPage County Circuit Court. It's our position that Lily Martin's TOD account should have been in her trust. So I just wanted to be careful about saying, I did not want to say that it was an equal distribution account. Okay. I have no further questions. Thank you. Does the panel have any questions based upon any of the other panelists' questions? No. Okay. Thank you. Thank you, Ms. Berlin. Thank you. Mr. Martin, you may proceed. I want to start by addressing the stipulation issue. In the record, I don't have it in front of me, but I'm just looking at the common law record. The stipulation that actually occurred was filed on August 1, 2019. The citation in the table of records is C-3325, Volume 7 to C-3328. It specifically provides that Tina Hyatt and Paul Martin will pay a third each of the guardian ad litem fees from the cash portion of their UBS account. It specifically says it will not come out of Alan Martin's portion. It's expressed and that the one-third will come from Alan Martin's portion of the monarch landing refund. So to the extent Your Honor had an understanding that there was something expressed, it is. It's in the stipulation. There further was an agreement in the email, which Ms. Berlin herself confirmed, that once this was done and these stipulations were signed, that UBS was to proceed with the one-third distribution of all the remaining assets, the non-cash assets and what have you, with Alan Martin's portion not being affected and everyone receiving their monies. Subsequently, Ms. Berlin reneged on that agreement and she failed to advise the court. There was a Cook County action that actually joined UBS, so there would be a determination so the one-third division and distribution could go forward. This action that Ms. Berlin referred to was subsequently filed after the Cook County many months later, and it's going to be subject to a motion to have that dismissed because all the parties are in Cook County. UBS is in Cook County. UBS has joined so that there will be an actual binding determination to go forward with the as agreed expressly in the email one-third, one-third distribution. Last, the monies that per the stipulation were paid out of the cash portions of Tina and Paul Martin's portion per that filed stipulation for the GAL. Going back to the very beginning, I think the one thing that we heard from a police counsel is what representative capacity that Tina Hyatt supposedly hold. She doesn't fall within the definition of any probate act representative that would be allowed to receive attorney's fees, and we set forth in our reply brief, and it's in the first two, three pages where the language of the statute is set out, and it specifically refers to there's a separate provision also that allows for the GAL to recover fees. If there's supposed to be some other representative when the legislature constructed the probate act and other instances such as interested person where there are a listing or identification of certain specifics, but there are others that may not be included, the legislature has included language such as including without and limitation. When it comes to the duties of an estate guardian, it says actions that an application of funds may include but shall not be limited to. In statutorial custodian claims, it includes the language including without limitation. There is no such language as to a probate act representative, so what's specified are the ones that are there. Tina Hyatt was not one of them. Paul Martin was not one of them. And as the Illinois Supreme Court has stated where a statute is clear and unambiguous, we cannot restrict or enlarge its meaning and must interpret it and apply it as written. The state of Shanker, the Hendrick B. Libertyville High School, the state of Mohawk cases of the Illinois Supreme Court cited in our brief. And then aside from that, but appellate counselors identified no representative capacity that Tina Hyatt held that was ever recognized by any court aside from the probate act. So in essence, you have just a petitioner. And there is reference to the one case, the Roselli case, 41-year-old case, where the facts were completely different from this case. And it did not apply, the court did not apply the statutory construction but could have gotten there under the same statutory construction. Because this was Mr. Roselli was, there was no dispute that the individual who was a client was actually in a coma, in a hospital. And they could not find anyone who was able to follow up because bills were mounting and the nurse found the attorney's card in his pocket of his pants, called the attorney and the attorney took actions on behalf of the party to make sure that these things get resolved. Subsequently, multiple heirs filed petitions to become a special administrator. And then a dispute arose as to whether counsel's fees were awardable or not. But in essence, there didn't need to be some pro forma adjudication of incapacity or that this attorney was acting in a representative act effectively as the guardian to take care of and take the steps necessary to protect the individual. But as importantly, from a public standpoint, the court also was very specific about saying that it agrees that it would not allow each of many heirs to hire his or her own attorney. There's a real public policy here that any party then holds no representative capacity whatsoever to file a petition and whether or not Mr. Martin, your time is up. Did you hear the peeper? So would you please close? Yes. Well, I don't think we have anything to answer that question. We're specific about UBS because the stipulation is only as the GAO it does have the carve out. There's nothing if we didn't have this comp from the other alternative available state assets that have been paid monies have been paid. And the court understood that they were going to be paid soon, even though they hadn't been received just yet, they have been paid as of now, there were alternative funds, they were available. The GAO was fine with having her money's paid from those alternative funds. There wasn't an issue as to that. And there shouldn't be an underwriting of somebody else's fees out of an account that transferred ownership when Thank you. Justice Hudson, do you have any questions? No, thanks. Thank you. Just the scene off. Do you have any questions? I had one question. Mr. Martin going back to the point you were making at the beginning of your rebuttal argument that Tina was not appointed representative under the probate act and did not have any official role. But isn't the word representative broader than that and not limited to a court appointed representative? There is some case law that would support that broader representation, isn't there? I don't believe that's the case, Your Honor, because I think the statute is clear. And when the legislature wanted to include other instances when something's identified, it includes language that's broadening that's without limitation. That's not found in the section on probate act representative. And so Tina Hyatt was not within the terms of the probate act definition and enumeration of who would be entitled to make a claim and have attorneys fees paid. She wasn't within the probate act. And she held no representative capacity. Representative even basic flax log dictionary. When you talk about a representative, somebody that has an agency capacity that has a legally recognized status, which neither Tina Hyatt nor Paul Martin had. Well, she was a person who was seeking guardianship, however, was she not? And I think that's no different than what Roselli says. You can't have many of heirs petitioning and recovering fees. So there wasn't an appointment. So even Roselli, in providing the fees for the attorney who was acting effectively in a guardian capacity for someone where there was no issue with this person was in a coma and incapacitated, would be able to fall in because effectively he was acting as a guardian and was a legal representative as the longtime attorney. But Tina Hyatt held no such status, either within the probate act or in any recognized status. Otherwise, you're going to have multiple people making all kinds of claims and can run up whatever fees. And then your state's going to be depleted by those kinds of claims. And Roselli specifically in allowing those attorneys fees made clear that that is not what the court was saying. Thank you. Catherine, you disappeared on me. Are you done asking questions? Yes, I said, thank you. I'm sorry. It wasn't. Okay. I have a few questions. Chancellor Lynn mentioned a cause of action relating to the interpretation of the trust. You have any comment as to what exactly the issues are in that case that might be relevant to this case? They aren't relevant, Your Honor, because at the end of the day, there's an express written agreement. It's in the emails for how this would proceed. There never was a dispute before the guardianship court about the TOD and the one third shares. That all was clear. And it was only afterwards that Ms. Berlin sent an email saying that she was, again, reneging on that agreement. So we filed in Cook County. We joined UBS to get this to go forward so it could be clearly resolved. And this action that now was brought was months later as a result of the Cook County action. And then there was an attempt to have the Cook County action transferred based on form nonconvenience to the subsequently filed case. That's still pending. But UBS is located in Chicago, so it's convenient for UBS. All the account records, all the individuals involved with managing the account are located there. Ms. Berlin herself is involved. She's a Chicago resident. The KB Law firm is doing business. In Chicago and in Chicago cases and other matters. So they're viewed as being in Chicago and finding it inconvenient for them. So that's going to be resolved in the Cook County case, and we'll be filing a motion to dismiss this other subsequently filed case. Okay. I have no further questions. Any other panelists have a question based upon the questions that were asked after them? No. Okay. Maybe Don is muted or muted. Hear me, Bill? I didn't hear you indicate whether or not you had any other questions based upon questions that were asked after you. No, I do not. Thanks. Okay. Thank you. Thank you. The panel will take the case under advisement, and I declare oral argument over. Thank you. Thank you, Your Honor. Thank you. Thank you.